DIF

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X
JOSEPH SETTY, LUIS SANCHEZ, and DANTE
HOLMES,

                        Plaintiffs,

        -against-

SYNERGY FITNESS and ALFREDO RODRIGUEZ,

                        Defendants.
-------------------------------------------------------------------X

**MEMORANDUM & ORDER**

**17-CV-6504 (NGG) (SMG)**

NICHOLAS G. GARAUFIS, United States District Judge.

      Plaintiffs Joseph Setty, Luis Sanchez, and Dante Holmes bring sex-discrimination,

retaliation, and unpaid-wages claims against their former employer, Defendant Synergy Fitness

("Synergy"), and their former manager, Defendant Alfredo Rodriguez. Plaintiffs argue that

Defendants violated the following federal, state, and local civil rights and labor laws: Title VII of

the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000(e) et seq.; Section 296 of the New

York State Human Rights Law ("NYSHRL"), N.Y. Exec. Law § 296 et seq.; Section 8-107 of

the New York City Human Rights Law ("NYCHRL"); the Fair Labor Standards Act of 1938

("FLSA"), 29 U.S.C. § 201 et seq., and the New York Labor Law ("NYLL"), N.Y. Labor Law §

650 et seq. (Compl. (Dkt. 1) at 1, 8-15.)

      Before the court is Plaintiffs' motion for default judgment. (Mot. for Default J. ("Mot.")

(Dkt. 12)). The court referred Plaintiffs' motion to Magistrate Judge Steven M. Gold, who

prepared a report and recommendation ("R&R") advising that the motion should be granted as to

Plaintiffs' Title VII sex-discrimination and retaliation claims against Synergy, their NYSHRL

and NYCHRL sex-discrimination and retaliation claims against both Defendants, and their

NYLL claims for unpaid wages against both Defendants; and denied as to Plaintiffs' Title VII

claim against Rodriguez and their FLSA claims for unpaid wages against both Defendants.

1

(R&R (Dkt. 25) at 1-2, 8, 22, 24, 26, 27.) Judge Gold further recommended that Holmes be awarded $35,000 and Setty and Sanchez be awarded $25,000 in emotional-distress damages on their Title VII, NYSHRL, and NYCHRL claims; that Setty be awarded $1,866.75 in compensatory damages and $1,866.75 in liquidated damages against Synergy and Rodriguez on his NYLL claim; that Setty be awarded prejudgment interest on $1,866.75 at a rate of 9% per annum from December 23, 2015, to the date that judgment is entered against Synergy and Rodriguez on his NYLL claim; and that Plaintiffs be awarded $7,375 in attorney's fees (based on a $250 hourly rate) and $413.40 in costs. (Id. at 42.)

Plaintiffs timely objected to certain portions of the R&R. (Pls. Objs. (Dkt. 27).) First, they request additional emotional-distress damages.[1] (Id. at 1-3.) Second, they object to Judge Gold's recommendation that they not be awarded punitive damages (id. at 3-5), even though they did not address punitive damages in their brief regarding damages (Mem. in Supp. of Mot. ("Mem.") (Dkt. 17).) Third, they request attorney's fees at an hourly rate greater than $250. (Pls. Objs. at 5.) For the following reasons, the R&R is ADOPTED IN FULL. Accordingly, Plaintiffs' motion for default judgment is GRANTED IN PART and DENIED IN PART, and the court awards Plaintiffs the damages, costs, and attorney's fees that Judge Gold recommended.

## I.    BACKGROUND

The R&R clearly sets forth the background of this case (R&R at 2-6), and the parties have not objected to Judge Gold's statement of facts and procedural history. The court thus adopts the R&R in this respect and offers the following summary for context. See Dong v.

---

[1] Plaintiffs also ask that the court clarify the precise amounts of emotional-distress damages that Judge Gold recommended. (Pls. Objs. at 1.)

Miller, 16-CV-5836 (NGG), 2018 WL 1445573, at *2 (E.D.N.Y. March 23, 2018) (adopting an R&R's statement of facts because the parties had not objected to it).

## A.    Facts

From April 2014 to January 2016, Setty worked as a personal trainer at Synergy, a gym in Brooklyn, New York. (R&R at 2.) Sanchez and Holmes worked at the same Synergy location from February 2015 to February 2016 and February 2015 to late July 2016, respectively, to work the front desk with the opportunity to become personal trainers. (Id.) Rodriguez, an openly gay male, became the manager of Synergy in February 2015. (Id.) Rodriguez subjected Plaintiffs, who are heterosexual males, to unwanted sexual comments, inappropriate touching, and—when Plaintiffs complained and refused to cooperate with his sexual misconduct—adverse employment decisions. (Id.)

### 1.    Joseph Setty

Almost immediately after Rodriguez became Synergy's manager, he began to flirt with and make overtly sexual comments to Setty daily. (Id.) For example, Rodriguez told Setty multiple times that he was "horny," would comment on the sexual anatomies of other male staff and gym members, would ask questions in a sexually suggestive way, and would follow Setty around the gym. (Id.) At first, Setty tried to ignore Rodriguez's advances, but eventually he indicated his displeasure with them. (Id. at 3.) In retaliation, Rodriguez restricted Setty's access to two private offices, and directed him to use a small corner of the gym to store his belongings and meet with new clients. (Id.) Additionally, several of Setty's paychecks bounced, and Synergy never reimbursed him for the resulting bank fees and surcharges that he incurred. (Id.) Setty reported Rodriguez's behavior to Antonella, another manager, and to the gym's owner, but they took no action. (Id.) On January 27, 2016, just two days after Setty complained to the

3

owner, Rodriguez terminated Setty, telling him that he heard Setty "wanted to open his own gym and that the owner wanted [] Setty gone." (Id.) The gym's owner later told Setty, however, that Rodriguez had acted alone in firing Setty. (Id.)

2. Dante Holmes

Rodriguez similarly subjected Holmes to sexual comments almost immediately after he was hired. (Id.) For example, Rodriguez called Holmes "a little cutie" around other employees and patrons and repeatedly said he wanted to "lick [Holmes's] ass." (Id.) Several times, he pinched Holmes's buttocks and nipples while Holmes was changing in the locker room and once, with others watching, pulled back Holmes's shower curtain to see him naked. (Id.) Rodriguez also sent Holmes text messages in which he called him names such as "bitch" and "faggit [sic]," and said "you have to sell [gym memberships], or I'll put my fingers up your ass." (Id. at 3-4.) Holmes also claims that he saw Rodriguez touch other male staff in a sexual manner. (Id. at 4.) Dana, another male trainer at Synergy, offered Holmes money to have sex with him; Holmes refused. (Id.) Holmes came to hate going to work and complained about the harassment to Antonella, but no steps were taken to address the inappropriate behavior. (Id.) Rodriguez learned about Holmes's complaint and fired him, but Antonella later rehired him. (Id.) Holmes's paychecks then began to bounce, and Rodriguez reduced Holmes's hours and gave his clients away to other trainers. (Id.) Holmes complained about the lack of hours and bounced checks, and Rodriguez fired him again. (Id.)

3. Luis Sanchez

On Sanchez's first day of work, Rodriguez said to a different employee but in Sanchez's presence, "I just hired this cute boy to work the front desk for me." (Id.) Rodriguez also made comments to Sanchez about which gym members Rodriguez thought were "hot" and "who had

4

the biggest penis." (Id.) Rodriguez told Sanchez that several of the trainers he hired were men with whom he had had sex in the past. (Id.) Additionally, Rodriguez openly watched gay pornography on the office computer, and on several occasions, pornography was on the screen when Sanchez logged into the computer. (Id.) Finally, Rodriguez would touch Sanchez without his consent—for instance, by approaching him from behind and touching his back and shoulders. (Id. at 5.)

Sanchez reported Rodriguez's behavior to Antonella, but the behavior persisted. (Id.) After hearing that Sanchez had complained, Rodriguez gave his clients to other male trainers. (Id.) Further, Synergy paid Sanchez inaccurate commissions for training clients and his payroll checks began to bounce, but he was never reimbursed. (Id.) Sanchez then quit. (Id.)

Based upon these allegations, Plaintiffs claim that Synergy was a hostile, sexually charged workplace. (Id.)

### B.  Procedural History

Plaintiffs filed complaints with the Equal Employment Opportunity Commission ("EEOC"), claiming sexual harassment and retaliation for reporting the harassment. (Id.) Plaintiffs received "right to sue" letters from the EEOC on August 9, 2017, and brought this suit on November 8, 2017. (Id.) In their complaint, Plaintiffs assert that they seek compensatory and punitive damages consisting of lost wages, emotional-distress damages, prejudgment interest, attorney's fees, and costs. (Id. at 5-6.)

On May 24, 2018, Judge Gold ordered Plaintiffs to "file a memorandum of law specifically identifying the claims they press and the relief they seek," which "should explain how the allegations in the complaint demonstrate that they are entitled to damages" and "provide the Court with a specific calculation of those damages." (May 24, 2018 Order (Dkt. 13).)

Plaintiffs then filed their memorandum, requesting lost wages, liquidated damages under the FLSA and NYLL, compensatory and emotional-distress damages under Title VII and the NYCHRL, and prejudgment interest; they did <u>not</u> request (or even mention) punitive damages. (Mem.) Judge Gold then held an inquest on Plaintiffs' request for damages on September 5 and 24, 2018. (<u>See</u> R&R at 1.) Plaintiffs' counsel was present both days and said nothing about punitive damages. (<u>See</u> Sept. 5, 2018 Hr'g Tr. (Dkt. 22); Sept. 24, 2018 Hr'g Tr. (Dkt. 24).)

Judge Gold issued his R&R on December 18, 2018. (R&R.) After receiving an extension, Plaintiffs filed timely objections on January 14, 2019. (Pls. Objs.)

## II.    LEGAL STANDARD

### A.    Review of a Magistrate Judge's R&R

When a party timely objects to a magistrate judge's R&R, the court reviews de novo "those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1)(C); <u>accord</u> Fed. R. Civ. P. 72(b)(3). The court otherwise reviews the R&R for clear error. <u>Dong</u>, 2018 WL 1445573, at *5. "Where objections are merely perfunctory responses and not specific and clearly aimed at particular findings in the magistrate judge's proposal, clear error, and not de novo, review applies." <u>Perez v. Lee</u>, No. 14-CV-5763 (JPO), 2018 WL 740995, at *2 (S.D.N.Y. Feb. 7, 2018) (internal quotation marks, citations, and emphasis omitted). "Furthermore, even in a de novo review of a party's specific objections, the Court ordinarily will not consider arguments, case law and/or evidentiary material which could have been, but were not, presented to the magistrate judge in the first instance." <u>4 B's Realty 1530 CR39, LLC v. Toscano</u>, 818 F. Supp. 2d 654, 659 (E.D.N.Y. 2011) (citation and quotation marks omitted).

## B. Default Judgment

Under Rule 55 of the Federal Rules of Civil Procedure, a party seeking a default judgment must follow a two-step process. Fed. R. Civ. P. 55; United States v. Calaman, No. 15-CV-180 (NGG) (PK), 2016 WL 8213831, at *3 (E.D.N.Y. Nov. 16, 2016), R&R adopted in part, 2017 WL 462050 (E.D.N.Y. Feb. 2, 2017). First, the party must request the Clerk of Court to enter default "[w]hen a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise." Fed. R. Civ. P. 55(a). "Second, after a default has been entered against [the opposing party], and the [opposing party] fails to appear or move to set aside the default under Rule 55(c), the Court may . . . enter a default judgment." Calaman, 2016 WL 8213831, at *3 (citing Fed. R. Civ. P. 55(b)(2)). When a defendant has defaulted, the court must accept the plaintiff's well-pleaded factual allegations as true and draw all reasonable inferences in the plaintiff's favor. Finkel v. Romanowicz, 577 F.3d 79, 84 (2d Cir. 2009) (citing Au Bon Pain Corp. v. Artect, Inc., 653 F.2d 61, 65 (2d Cir. 1981)). However, because a default is only an admission of factual allegations, not conclusions of law, the court must determine if those factual allegations, taken as true, establish the defendant's liability as a matter of law. See id. (citing Au Bon Pain, 653 F.2d at 65).) Only "if liability is established as a matter of law when the factual allegations are taken as true" may the court enter default judgment. Bricklayers & Allied Craftworkers Local 2, Albany, N.Y. Pension Fund v. Moulton Masonry & Constr., LLC, 779 F.3d 182, 187 (2d Cir. 2015).

## III.   DISCUSSION

### A.   Liability

No party has objected to Judge Gold's recommendation that Plaintiffs' motion for default judgment should be granted as to Plaintiffs' Title VII sex-discrimination and retaliation claims against Synergy, their NYSHRL and NYCHRL sex-discrimination and retaliation claims against both Defendants, and their NYLL claims for unpaid wages against both Defendants; and denied as to Plaintiffs' Title VII claim against Rodriguez and their FLSA claims for unpaid wages against both Defendants.  Accordingly, the court reviews the R&R's analysis of those claims for clear error.  Finding none, the court adopts the R&R in this respect.

### B.   Damages and Fees

#### 1.   Clear-Error Review

No party has objected to Judge Gold's recommendations that Plaintiffs be awarded $413.40 in costs and that, on his claim for unpaid wages under the NYLL against Synergy and Rodriguez, Setty be awarded $1,866.75 in compensatory damages, $1,866.75 in liquidated damages, and prejudgment interest on $1,866.75 at a rate of 9% per annum from December 23, 2015 to the date judgment is entered.  (R&R at 42.)  Finding no clear error in the R&R's analysis of these issues, the court adopts the R&R in this respect.

#### 2.   De Novo Review of Plaintiffs' Objections

##### a.   Emotional-Distress Damages

Judge Gold recommended awarding Holmes $35,000, and Setty and Sanchez each $25,000, in emotional-distress damages against Synergy on their Title VII claims and against Synergy and Rodriguez on their NYSHRL and NYCHRL claims.[2]  (Id. at 37, 42.)  He notes that

---

[2] Plaintiffs ask the court to clarify the total amount of emotional-distress damages that Judge Gold recommended in his R&R.  (Pls. Objs. at 1.)  In the R&R, Judge Gold wrote the following: "I respectfully recommend that Plaintiff

"there appears to be a 'spectrum' or 'continuum' of damage awards for emotional distress, ranging from $5,000 to more than $100,000, representing 'garden-variety,' 'significant' and 'egregious' emotional distress claims." (R&R at 33 (quoting Rainone v. Potter, 388 F. Supp. 2d 120, 122 (E.D.N.Y. 2005) (quotation marks omitted).) "A claim for emotional distress is considered typical or 'garden-variety' where 'the plaintiff did not seek medical treatment but where the evidence in the form of plaintiff's testimony describes shock, nightmares, sleeplessness, humiliation, and other subjective distress.'" (R&R at 34 (quoting Santiago v. Crown Heights Ctr. for Nursing & Rehab., 2017 WL 9482107, at *23 (E.D.N.Y. Feb. 24, 2017) (recommending an award of $30,000 where plaintiff testified that he experienced "anxiety, stress, shame and embarrassment, and loss of self worth"), R&R adopted in part, 2017 WL 4410807 (E.D.N.Y. Sept. 30, 2017) (collecting cases).) "Courts generally award damages for garden-variety emotional distress claims ranging from $5,000 to $35,000 'based upon the plaintiff's vague or conclusory testimony of distress.'" (Id. (quoting Joseph v. HDMJ Rest., Inc., 970 F. Supp. 2d 131, 153 (E.D.N.Y. 2013) (awarding $30,000 where plaintiff claimed that she, among other things, became irritable and despondent, felt severe anxiety, suffered from depression, had trouble concentrating, suffered from nightmares, and withdrew from family and friends).)[3] "By contrast, a significant emotional distress claim," which would support damages

---

Setty and Sanchez be awarded $25,000 each in damages for emotional distress and that Plaintiff Holmes be awarded $35,000 in damages for emotional distress." (R&R at 37; accord id. at 42.) Plaintiffs believe that Judge Gold may have meant to recommend that Holmes be awarded $35,000 and Setty and Sanchez $25,000 for each of their three claims, resulting in totals of $105,000 and $75,000, respectively. (Pls. Objs. at 1.) Plaintiffs are wrong. Judge Gold's language on p. 37 of the R&R is clear: he recommended that Holmes should be awarded $35,000 and Setty and Sanchez should each be rewarded $25,000. (R&R at 37.) Such awards are consistent with Judge Gold's finding that Plaintiffs' emotional-distress claims were "garden-variety." (Id.)

[3] For an additional example, see Francis v. Ideal Masonry, Inc., No. 16-CV-2839 (NGG) (PK), 2018 WL 4292171, at *11 (E.D.N.Y. Aug. 3, 2018) (recommending award of $15,000 to African-American plaintiffs who were called racially offensive names and terminated based on their race, who testified that they felt "different," "bad," "degraded," "fearful," and "constantly stressed and anxious"), R&R adopted, 2018 WL 4288625 (E.D.N.Y. Sept. 7, 2018). But see Olsen v. Cty. of Nassau, 615 F. Supp. 2d 35, 46 (E.D.N.Y. 2009) (noting that garden-variety emotional distress claims can merit awards up to $125,000).

of $50,000 to $100,000, "ordinarily consists of 'more substantial harm, usually evidenced through medical testimony or documentation.'" (Id. (quoting Joseph, 970 F. Supp. 2d at 153).) See Rainone, 388 F. Supp. 2d at 122-23 (noting that courts have awarded damages ranging from $50,000 to $100,000 for significant emotional distress claims where the harm is supported by "medical testimony or evidence, evidence of treatment by a healthcare professional and/or medication, and testimony from other, corroborating witnesses") (citation omitted).

Judge Gold deemed Plaintiffs' claims "garden-variety" because they did not present evidence from medical experts or anyone else to corroborate their claims of emotional distress, and because Plaintiffs do not allege that their psychological symptoms are ongoing. (R&R at 37.) He found that "Holmes was subjected to the most egregious and disturbing harassment," and thus recommended that Holmes receive $10,000 more in damages than Setty or Sanchez. (Id.)

Plaintiffs argue that these damages are too low and are incongruent with Judge Gold's descriptions of Defendants' conduct. (Pls. Objs. at 1-3.) Most of the cases Plaintiffs cite in support of their objection are inapposite as they relate only to liability, not to damages. (Id. at 2 (citing Redd v. New York Div. of Parole, 678 F.3d 166, 179 (2d Cir. 2012); Kaytor v. Elec. Boat Corp., 609 F.3d 537, 547 (2d Cir. 2010); Reid v. Ingerman Smith LLP, 876 F. Supp. 2d 176, 186 (E.D.N.Y. 2012).) However, they do cite one case in which another court in this district granted a plaintiff $130,000 in emotional-distress damages even though the plaintiff's testimony was uncorroborated and she did not seek medical or psychiatric treatment. (Id. at 3 (citing Gutierrez v. Taxi Club Management, Inc., No. 17-CV-532 (AMD) (VMS), 2018 WL 3432786, at *10 (E.D.N.Y. June 25, 2018), R&R adopted, 2018 WL 3429903 (E.D.N.Y. July 16, 2018).) That case is distinguishable. There, the plaintiff testified at an inquest that her psychological

symptoms persisted after the defendant fired her and that she had difficulties finding comparable work; consequently, Magistrate Judge Vera M. Scanlon found that, more than eighteen months after the plaintiff had been fired, "the harassment and retaliation that [she] suffered continue[d] to adversely affect [her] quality of life."[4] Gutierrez, 2018 WL 3432786, at *9. Conversely, after holding a damages inquest in this case, Judge Gold stated that "none of the Plaintiffs claim that their psychological symptoms are ongoing," which was one reason he found that "their emotional distress is consistent with garden-variety claims." (R&R at 37.)

The court agrees with Judge Gold's analysis. Absent corroboration from medical experts or evidence that their psychological symptoms are ongoing, Plaintiffs' emotional distress is consistent with garden-variety claims. Therefore, Judge Gold's recommendations of $35,000 in damages for Holmes and $25,000 for Setty and Sanchez—which are toward the high end of awards in garden-variety cases—are appropriate. See Joseph v. HDMJ Rest., Inc., 970 F. Supp. 2d at 153-54 ("For typical or garden-variety emotional distress claims, district courts have awarded damages ranging from $5,000 to $35,000, based upon the plaintiff's vague or conclusory testimony of distress." (citation omitted)).[5]

---

[4] That plaintiff also testified "that she felt uncomfortable and sick, cried at work, had migraine headaches, routinely felt nauseous, vomited, had trouble sleeping, suffered from stress and anxiety, overate, and felt a general sensation of helplessness," which led Magistrate Judge Scanlon to find that she "suffered more than typical 'garden variety' emotional distress." Gutierrez, 2018 WL 3432786, at *9 (citations and quotation marks omitted).

[5] Plaintiffs cite an opinion in which Judge Scanlon noted that the scale of damages for garden-variety claims—$5,000 to $35,000—was first articulated in a 2005 case. Gutierrez, 2018 WL 3432786, at *9 (citing Rainone, 388 F. Supp. 2d at 122). In 2018, applying the Consumer Price Index inflation calculation, these amounts should have been adjusted to $6,500 and $45,000, respectively. Id. Applying the same calculation, the range for "significant" claims should be $65,000 to $130,000 for significant claims and upwards of $130,000 for egregious claims. Id. Plaintiffs did not mention this in their objections, Judge Gold certainly did not commit clear error by not accounting for inflation, and the damages recommended by Judge Gold are within the inflation-adjusted range in any event. In the future, however, this court will look to the adjusted scale set forth by Judge Scanlon in assessing damages for emotional-distress claims.

### b. Punitive Damages

Plaintiffs also object to Judge Gold's not addressing whether they should be awarded

punitive damages. (Pls. Objs. at 3-5.) Judge Gold did not address punitive damages because

Plaintiffs did not ask him to do so. In response to Judge Gold's order that they "specifically

identify[] . . . the relief they seek," "explain how the allegations in the complaint demonstrate

that they are entitled to damages," and "provide the Court with a specific calculation of those

damages" (May 24, 2018 Order), Plaintiffs filed a twenty-nine-page brief that discussed other

types of damages at length, but did not mention punitive damages (see Mem. at 19-28.)

Plaintiffs' counsel also appeared at both days of Judge Gold's damages inquest and did not

mention punitive damages. (See Sept. 5, 2018 Hr'g Tr.; Sept. 24, 2018 Hr'g Tr.)

Plaintiffs now argue that they are entitled to punitive damages because Defendants "acted

with malice and reckless indifference," but do not explain why they did not present these

arguments to Judge Gold. (See Pls. Objs. at 3-5.) This court will not consider Plaintiff's

arguments for punitive damages because they "could have been, but were not, presented to the

magistrate judge in the first instance." See 4 B's Realty 1530 CR39, LLC, 818 F. Supp. 2d at

659.

### c. Attorney's Fees

Finally, Plaintiffs object to Judge Gold's recommendation that the rate of attorney's fees

for their counsel, Lonnie Hart, be set at $250 per hour. (Pls. Objs. at 5.) In support of his

recommendation, Judge Gold noted that the "prevailing rates for experienced attorneys in this

District range from approximately $300-400 per hour," whereas reasonable hourly rates for

senior associates are $200-$325. (R&R at 39 (quoting Konits v. Karahalis, 409 F. App'x 418,

422 (2d Cir. 2011).) Plaintiffs' counsel did not provide Judge Gold with any information

regarding his education, reputation, or experience. (See R&R at 40.) "Moreover," Judge Gold stated, "this case does not prevent novel or complex questions of fact or law, and the challenge of litigating the action has been substantially diminished by Defendants' default." (Id.) For these reasons, Judge Gold found "that a reasonable attorney's fee here is rightfully toward the lower end of the spectrum for senior attorneys." (Id.)

Plaintiffs' counsel, Lonnie Hart, now contends that his experience warrants a higher hourly rate. (Pls. Objs. at 5.) He provides biographical information in his objections, conceding that he neglected to provide Judge Gold with this information earlier. [6] (Id.) Hart graduated law school in 1998, was an Assistant District Attorney in the Kings County District Attorney's Office from 1998-2002, and has been in private practice ever since, focusing on criminal matters but also handling civil rights cases. (Id.) In a previous case in this district, he was granted attorney's fees at a $300 hourly rate. (Id. (citing Small v. New York Transit, No. 03-CV-2139 (SLT) (MDG), 2014 WL 1236619, at *5-7 (E.D.N.Y. Mar. 25, 2014).) Unlike the defendants in that case, though, see id. at 7 (referencing arguments made by the defendants), Defendants have defaulted. As Judge Gold observed, this substantially reduced the challenge of litigating this case. (See R&R at 40.) Thus, this court finds that a $250 hourly rate for Plaintiffs' counsel— just $50 less than he received in a more challenging case—is appropriate. See Moore v. Houlihan's Rest., Inc., No. 07-CV-3129 (ENV) (RER), 2011 WL 2470023, at *7-8 (E.D.N.Y. May 10, 2011) (reducing requested hourly rates in default-judgment context), R&R adopted, 2011 WL 2462194 (E.D.N.Y. June 17, 2011); see also Xochimitl v. Pita Grill of Hell's Kitchen, Inc., No. 14-CV-10234 (JGK) (JLC), 2016 WL 4704917 (S.D.N.Y. Sept. 8, 2016), at *20 (noting

---

[6] The court need not consider the new biographical information provided by Plaintiffs' counsel because it "could have been, but [was] not, presented to the magistrate judge in the first instance." See 4 B's Realty 1530 CR39, LLC, 818 F. Supp. 2d at 659.

that attorney's fees have been awarded at lower rates "in cases that are relatively simple because the defendants defaulted" (citations and quotation marks omitted)), <u>R&R adopted</u>, 2016 WL 6879258 (S.D.N.Y. Nov. 21, 2016). As Plaintiffs' counsel reasonably expended 29.5 hours on this case, the court adopts Judge Gold's recommendation and grants Plaintiffs $7,375 in attorney's fees. (<u>See</u> R&R at 41.)

*    *    *

In sum, the court <u>grants</u> Plaintiffs' default-judgment motion as to their Title VII sex-discrimination and retaliation claims against Synergy, their NYSHRL and NYCHRL sex-discrimination and retaliation claims against both Defendants, and their NYLL claims for unpaid wages against both Defendants. The court <u>denies</u> the motion as to Plaintiffs' Title VII claim against Rodriguez and their FLSA claims for unpaid wages against both Defendants. The court awards Holmes $35,000 and Setty and Sanchez $25,000 each in emotional-distress damages on their Title VII, NYSHRL, and NYCHRL claims. With respect to Setty's NYLL claim against Synergy and Rodriguez, the court awards Setty $1,866.75 in compensatory damages, $1,866.75 in liquidated damages, and prejudgment interest on $1,866.75 at a rate of 9% per annum from December 23, 2015, to the entry date of this order. The court further awards Plaintiffs $7,375 in attorney's fees and $413.40 in costs.

## IV.    CONCLUSION

For the foregoing reasons, the court ADOPTS the R&R (Dkt. 25) in its entirety and

GRANTS IN PART and DENIES IN PART Plaintiffs' motion for default judgment (Dkt. 12).


SO ORDERED.

s/Nicholas G. Garaufis

Dated: Brooklyn, New York
　　　 March 20 2019

NICHOLAS G. GARAUFIS
United States District Judge